UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

RAFAEL DURAN,

                    *Plaintiff*,

      -against-

COMMISSIONER OF SOCIAL SECURITY,

                    *Defendant*.

---------------------------------------X

<u>**MEMORANDUM AND ORDER**</u>

20-cv-4542 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

       Plaintiff Rafael Duran ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") finding him not disabled within the meaning of the Social Security Act (the "Act") and not entitled to disability insurance benefits under Title II of the Act.  Plaintiff and the Commissioner have cross moved for judgment on the pleadings.  For the reasons herein, Plaintiff's motion is **GRANTED**, the Commissioner's motion is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

The parties have filed a joint stipulation of relevant facts, which the court has reviewed and incorporates by reference. (*See generally* ECF No. 21, Joint Stipulation of Facts.)  Here, the court briefly recounts the facts relevant to the instant motions.

On October 3, 2016,[1] Plaintiff filed an application for disability insurance benefits ("DIB"), alleging disability since October 1, 2016.  (ECF No. 17, Administrative Transcript ("Tr."), at 21.)  Plaintiff claimed that he was disabled due to a heart condition, diabetes, depression, learning problems, knee pain, and a swollen foot.  (*Id.* at 85.)  His application was denied on December 6, 2016.  (*Id.* at 81.)

On December 30, 2016, Plaintiff filed a written request for a hearing before an administrative law judge.  (*Id.* at 87.) Administrative Law Judge Ifeoma N. Iwuamadi (the "ALJ") held a hearing on December 4, 2018, during which Plaintiff appeared and testified.  (*Id.* at 49.)  By a decision dated July 2, 2019, the ALJ determined that Plaintiff was not disabled.  (*Id.* at 15.) Plaintiff appealed the ALJ's decision to the Appeals Council. (*Id.* at 193.)  On July 22, 2020, the Appeals Council denied review of the ALJ's decision, rendering it the final decision of the Commissioner.  (*Id.* at 1.)

---

[1] Plaintiff's memorandum of law in support of his motion for judgment on the pleadings mistakenly notes this date as October 6, 2016.  (Pl. Mem. at 2.)

Plaintiff initiated the instant action on September 24, 2020.  (ECF No. 1, Complaint.)  On September 29, 2020, the court issued a scheduling order.  (ECF No. 4, Scheduling Order.)  On October 14, 2021, Defendant filed the Administrative Transcript.  (Tr.)

On June 25, 2021, Plaintiff served his notice of motion and memorandum of law in support of his motion for judgment on the pleadings.  (ECF Nos. 18, Plaintiff's Notice of Motion for Judgment on the Pleadings; 18-1, Plaintiff's Memorandum of Law in Support of his Motion for Judgment on the Pleadings, ("Pl. Mem.").)  On September 22, 2021, Defendant served its notice of cross-motion and memorandum of law in support of its cross-motion for judgment on the pleadings and in opposition to Plaintiff's motion.  (ECF Nos. 19, Defendant's Notice of Cross-Motion; 19-1, Defendant's Memorandum of Law in Support of its Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, ("Def. Mem.").)  Plaintiff then served a reply memorandum of law in further support of his motion for judgment on the pleadings on October 13, 2021.  (ECF No. 20, Plaintiff's Reply Memorandum of Law.)  The entire set of motion papers was filed on October 14, 2021.

## LEGAL STANDARD

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits "within sixty days after the mailing . . . of notice of such decision or

within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971) (internal quotation marks omitted)).

If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted). The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

During this five-step process, the Commissioner must consider whether the combined effect of all of the claimant's impairments, including those that are not severe (as defined by the regulations), would be of sufficient severity to establish eligibility for Social Security benefits. 20 C.F.R. §§ 404.1523, 404.1545(a)(2). At steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F3.d at 128. At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity ("RFC"), age, education,

and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, upon reviewing decisions of the Commissioner, to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted)). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. However, if the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits. *See, e.g.*, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

**DISCUSSION**

**I.    The ALJ's Disability Determination**

Using the five-step sequential process, the ALJ
determined at step one that Plaintiff had not engaged in
substantial gainful activity since the alleged onset date of
October 1, 2016.  (Tr. at 23.)  At step two, the ALJ determined
that Plaintiff suffered from the severe impairments of coronary
artery disease, status-post stents, hypertension, diabetes
mellitus, bilateral knee derangement, major depressive disorder,
generalized anxiety disorder, and panic disorder.  (*Id.*)

At step three, the ALJ determined that Plaintiff does
not have an impairment or combination of impairments that meets or
medically equals the severity of one of the listed impairments in
20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),
404.1525, and 404.1526).  (Tr. at 24.)  Specifically, the ALJ found
that Plaintiff's impairments did not meet the criteria of major
dysfunction of a joint under Listing 1.02, disorders of the
cardiovascular system under Listing 4.00, depressive, bipolar, and
related disorders under Listing 12.04, and anxiety and obsessive-
compulsive disorders under Listing 12.06.  (*Id.* at 24-27.)

Regarding Plaintiff's mental impairments, the ALJ
considered whether the "paragraph B" criteria of the
aforementioned mental impairment listings were satisfied.  (*Id.* at
24.)  To satisfy the "paragraph B" criteria, Plaintiff's mental

8

impairments must result in at least one "extreme" or two "marked"
limitations in the following areas of mental functioning: (1)
understanding, remembering, or applying information; (2)
interacting with others; (3) concentrating, persisting, or
maintaining pace; and (4) adapting or managing oneself. (*Id.* at
24.)  Based on her review of Plaintiff's medical records, the ALJ
determined that Plaintiff had moderate limitations in the first
and third areas of mental functioning, and mild limitations in the
second and fourth areas. (*Id.* at 24-27.)

        The ALJ determined that Plaintiff had a moderate
limitation in understanding, remembering, or applying information,
based on: (1) the October 28, 2016 consultative psychiatric
examination by Dr. Michael Kushner, who opined that Plaintiff had
no limitations in understanding and following simple instructions,
and carrying them out independently, though he may have mild to
moderate limitations in doing the same for complex tasks and in
learning new tasks; and (2) Plaintiff's November 1, 2016 Adult
Function Report, in which he noted that he was unable to follow
written instructions and had trouble remembering things. (*Id.* at
24-25.)  The ALJ determined that Plaintiff had a mild limitation
in interacting with others, based on the October 2016 consultative
examination, Plaintiff's treatment records, both physical and
mental, the November 2016 Adult Function Report, and Plaintiff's
hearing testimony. (*Id.* at 25.)  As for the third area of mental

functioning, concentrating, persisting, or maintaining pace, the ALJ found that, based on the evidence as a whole, Plaintiff had, at most, a moderate limitation. (*Id.*) Finally, the ALJ determined that Plaintiff had a mild limitation in adapting or managing oneself, having observed that Plaintiff consistently demonstrated normal demeanor and behavior, and the ability to engage in personal care and grooming, and did not appear to have any limitations in making appropriate decisions. (*Id.* at 25-26.)

The ALJ also considered whether the "paragraph C" criteria of Listings 12.04 and 12.06 were satisfied, and concluded that "the evidence fails to establish the presence of the 'paragraph C' criteria." (*Id.* at 27.)

At step four of the five-step sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform light work, with the following conditions: (1) sitting for 6 hours and standing/walking for 6 hours in an 8-hour workday, (2) occasionally lifting and carrying 20 pounds, (3) frequently lifting and carrying 10 pounds, (4) occasionally climbing ramps or stairs, (5) occasionally kneeling, crouching, and crawling, (6) occasionally driving a motor vehicle, (7) never using foot controls with either foot, (8) never climbing ladders, ropes, or scaffolds, (9) making simple work-related decisions, and (10) performing simple, routine tasks. (*Id.* at 27.)

In determining that Plaintiff had the RFC to perform light work, with special conditions, the ALJ relied on Plaintiff's hearing testimony and medical records, which included pharmacy records, hospital records, consultative examination reports of Dr. Iqbal Teli (internist) and Michael Kushner, Ph. D. (psychologist), and treatment records from Drs. Lubov Sychikov (internist) and Nagmo Fatakhova (psychiatrist). (*Id*. at 36-38.)  The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (*Id*. at 36.)

Finally, at step five of the sequential evaluation process, the ALJ found, based on Plaintiff's RFC, that he was capable of performing his past relevant work as a poultry dresser. (*Id.* at 38.)  In arriving at this conclusion, the ALJ relied on the vocational expert's testimony that Plaintiff retains the RFC to perform the functional demands and job duties of a poultry dresser. (*Id.*)  Accordingly, the ALJ found that Plaintiff was not "disabled" and thus not entitled to DIB under the Act.  (*Id.*)

11

## II.  The ALJ's Assessment of Opinion Evidence

Under the treating physician rule, the opinion of a claimant's treating physician as to "the nature and severity of the [claimant's] impairment is given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Burgess*, 537 F.3d at 128; 20 C.F.R. § 404.1527(c)(2)).[2]

An ALJ who does not accord controlling weight to a treating physician's medical opinion must consider the following non-exclusive *Burgess* factors in determining how much weight to give to the opinion: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019) (citation omitted); *see* 20 C.F.R. § 404.1527(c)(2); *but see Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."). "The ALJ

---

[2] In 2017, new regulations were issued that changed the standard for evaluating medical opinion evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. However, because Plaintiff filed his claims on October 3, 2016, the previous regulations, including the treating physician rule, still apply.

must then 'comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion.'" *Cichocki v. Astrue*, 534 F. App'x. 71, 75 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

However, "a treating physician's conclusion that a claimant is disabled is not entitled to controlling weight, as this determination is reserved to the Commissioner." *Quiles v. Saul*, No. 19-cv-11181(KNF), 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021); *see* 20 C.F.R. § 404.1527(d)(1). "[W]hen an ALJ discounts a treating physician's opinion that a claimant is disabled, the ALJ is obligated to give good reasons for doing so." *Id.*

Plaintiff contends that the ALJ did not properly apply the treating physician rule in assessing the opinions of Plaintiff's treating physician, Dr. Lee, and treating psychiatrist, Dr. Fatakhova. (Pl. Mem. at 4-7.) The court discusses each of their opinions in turn.

## A.   The ALJ's Assessment of Dr. Lee's Opinion

The ALJ gave "[n]o weight" to Dr. Lee's December 2018 opinion that Plaintiff could never stoop or bend, only occasionally reach, only occasionally, or up to two hours in an eight-hour day, lift and carry 5 to 10 pounds, sit for less than 6 hours per day,

and stand and/or walk for less than 2 hours per day. (Tr. at 30, 37, 451–53.) The ALJ deemed Dr. Lee's assessment of Plaintiff's limitations "excessive," finding that "the medical evidence and clinical findings of record do not support such extreme limitations." (*Id.* at 37.) In particular, the ALJ found that the limitations Dr. Lee ascribed to Plaintiff were not consistent with Plaintiff's hearing testimony, conservative treatment for his bilateral knee impairments, and daily activities. (*Id.*)

Although the ALJ acknowledged that Dr. Lee was "reportedly a treating source," the ALJ did not analyze Dr. Lee's opinion using the *Burgess* factors nor provide good reasons for not according it controlling weight. (*Id.* at 30, 37.) In particular, the ALJ failed to explain the supportability and consistency of Dr. Lee's opinion; her conclusory statements that Dr. Lee's opinion is not consistent with the medical evidence and clinical findings in the record are not enough to allow the court to assess whether the opinion was properly rejected. (*Id.*) *See Rugless v. Comm'r of Soc. Sec.*, 548 F. App'x 698, 700 (2d Cir. 2013) (summary order) (finding that the ALJ's "conclusory explanation" for assigning little weight to a treating physician's opinion, namely, that the opinion is "inconsistent with the record and not supported by any facts or findings" is a cause for remand for further proceedings). Further, the ALJ did not consider the frequency, nature, and extent

14

of Dr. Lee's treating relationship with Plaintiff.[3]  (*Id.*)  Though "[i]t is not necessary that the ALJ recite each factor explicitly," her decision must "reflect[] application of the substance of the [treating physician] rule." *Martinez-Paulino v. Astrue*, No. 11-cv-5485(RPP), 2012 WL 3564140, at *16 (S.D.N.Y. Aug. 20, 2012).

Here, because the ALJ did not apply the treating physician rule properly, remand is appropriate. *See Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (summary order) ("Where an ALJ fails properly to acknowledge [the treating physician rule] or to provide 'good reasons' for the weight given to the treating physician's opinion, we do not hesitate to remand.") (citation omitted).  On remand, the ALJ is directed to comprehensively apply the *Burgess* and regulatory factors to determine the weight to be given to Dr. Lee's opinion.  If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ "must nonetheless articulate a basis for the alternative weight assigned." *Knight v. Comm'r*, No. 18-cv-2474(KAM), 2020 WL 3085778 at *7 (E.D.N.Y. June 10, 2020).

---

[3] Defendant contends that "[a]lthough Dr. Lee indicated that she treated Plaintiff for more than three years, the record contained no clear evidence of a treating relationship as required to be entitled to deference as a 'treating source' under the regulations." (Def. Mem. at 8.)  The ALJ's decision, however, does not reflect any determination on the ALJ's part, express or implied, that the treating physician rule did not apply to Dr. Lee's opinion due to the purported lack of a treating relationship between Dr. Lee and Plaintiff. Accordingly, the court respectfully declines to adopt Defendant's post-hoc rationalization of the ALJ's decision to accord no weight to Dr. Lee's opinion of Plaintiff's physical functionality without properly applying the treating physician rule.

**B.    The ALJ's Assessment of Dr. Fatakhova's Opinion**

Plaintiff contends that the ALJ "summarily rejected" Dr. Fatakhova's opinion.  This argument is meritless.  The ALJ gave "considerable weight" to Dr. Fatakhova's opinion related to Plaintiff's ability to understand, remember, and apply information, and concentration, persistence, and ability to maintain pace.  (Tr. at 37.)  In assigning such weight, the ALJ appropriately considered and gave deference to Dr. Fatakhova as a treating source.[4]  (*Id.*)  Indeed, the ALJ's mental functioning assessment that Plaintiff should be limited to performing simple, routine tasks, and making simple work-related decisions is consistent with the portions of Dr. Fatakhova's opinion to which the ALJ gave considerable weight.

The ALJ gave "less weight" to Dr. Fatakhova's opinion that Plaintiff has moderate limitations in adapting and managing himself, and that Plaintiff's mental impairments would "substantially interfere with his productive work for more than 20% of the workday."  (*Id.*)  The ALJ may "only credit portions of a medical source opinion, or weigh different parts of the opinion differently" so long as the ALJ "provid[es] sound reasons for the discrepancy."  *Destina v. Berryhill*, No. 17-cv-2382(ADS), 2018 WL 4964103, at *6 (E.D.N.Y. Oct. 15, 2018).  Here, the ALJ

---

[4] The ALJ noted that Dr. Fatakhova had treated Plaintiff since December 2016, and that Plaintiff had been receiving outpatient psychiatric treatment from Dr. Fatakhova on a bimonthly basis since January 2017.  (Tr. at 32–35.)

appropriately examined the administrative record, explained which
portions of Dr. Fatakhova's opinion were accorded less weight, and
explained why the selected portions were weighed differently. (Tr.
at 37.)

Regarding Plaintiff's ability to adapt and manage
himself, the ALJ noted that Plaintiff testified to being able to
perform certain daily activities such as cooking, cleaning, and
buying groceries, and that he was "able to travel on vacation,
with minimal anxiety due to forgetting his psychiatric
medications." (*Id.*); *see also Kelly Ann C. v. Saul*, No. 18-cv-
468(DJS), 2019 WL 3321923, at *4 (N.D.N.Y. July 24, 2019) (finding
substantial evidence supporting the assessment of mild limitations
adapting and managing oneself where the plaintiff was able to
"handle self-care and personal hygiene and prepare meals, pay
bills, go to doctors' appointments, take medications, shop, and
read"); *Dayle B. v. Saul*, No. 20-cv-00359(TOF), 2021 WL 1660702,
at *13 (D. Conn. Apr. 28, 2021) (finding substantial evidence
supporting the assessment of mild limitations adapting and
managing oneself where the plaintiff "retained the capacity to
care for her personal needs, cook, clean, grocery shop, and drive")
(internal quotation omitted). The ALJ also noted that Plaintiff
had never been hospitalized for his psychiatric conditions and
that the results of Dr. Fatakhova's mental health examinations of
Plaintiff stated that he was well groomed, cooperative, with calm

17

motor behavior, adequate insight, and good judgment. (Tr. at 32–35.) Accordingly, the ALJ's finding that Plaintiff has mild limitations in adapting and managing himself is supported by substantial evidence, and the ALJ properly applied the treating physician rule in according less weight to Dr. Fatakhova's opinion that Plaintiff has moderate limitations.

Similarly, the ALJ determined that Dr. Fatakhova's opinion that Plaintiff's mental impairments would "substantially interfere with his productive work for more than 20% of the workday" should be assigned less weight, based on Dr. Fatakhova's own treatment notes indicating that Plaintiff was responding well to treatment, his symptoms were less prominent, and the results of his mental status examinations were normal. (Tr. at 37.) Therefore, the court finds that the ALJ properly applied the treating physician rule in assigning less weight to this portion of Dr. Fatakhova's opinion, and that the decision to give less than controlling weight is supported by substantial evidence. *See also Heaman v. Berryhill*, 765 F. App'x 498, 501 (2d Cir. 2019) (summary order) (approving the ALJ's decision to partially discount a treating provider's opinions because those opinions "were inconsistent with the moderate findings" reflected in the notes); *Ruff v. Saul*, No. 19-cv-01515(SRU), 2020 WL 6193892, at *11 (D. Conn. Oct. 22, 2020) (finding that the ALJ's decision to give partial weight to a treating source's opinion based on

18

evidence of plaintiff's symptom improvement with medication was supported by substantial evidence); *Muratovic v. Saul*, No. 19-cv-2290(SPM), 2020 WL 5642294, at *4 (E.D. Mo. Sept. 22, 2020) (finding that the ALJ's decision to discount part of a treating source's opinion based on conflicting evidence of plaintiff's appearance, daily activities, lack of inpatient treatment, and improvement of symptoms with medication was supported by good reasons based on substantial evidence).

## III. ALJ's Classification of Plaintiff's Prior Work as "Poultry Dresser,"

Finally, Plaintiff alleges that the ALJ's finding that he can return to his past relevant work constitutes legal error because his past work was incorrectly classified. (Pl. Mem. at 7-10.) Specifically, Plaintiff contends that his previous work should have been classified as a composite job, combining "poultry dresser," Dictionary of Occupational Titles ("DOT") 525.687-070, and "poultry dresser worker," DOT 525.687-082. (*Id.* at 8-10.) A composite job "combines significant elements of two or more positions . . . ." *Izzo v. Saul*, No. 18-cv-09681(NSR), 2020 WL 1189095, at *3 (S.D.N.Y. Mar. 11, 2020). According to Plaintiff, because the DOT job description for "poultry dresser" does not capture the frequent lifting and carrying of up to 50 pounds, which was an important part of his past job, (*id.* at 8; Tr. at 216), the ALJ erred in classifying his previous employment according to its

19

"least demanding function." (ECF No. 20, Plaintiff's Reply Memorandum of Law, at 5.)

At step four of the sequential five-step framework, a "claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citations omitted). The "inquiry requires separate evaluations of the previous job and the job as it is generally performed." *Id.*

According to the DOT, the job of a poultry dresser involves:

> Slaughter[ing] and dress[ing] fowl in preparation for marketing, performing any combination of following tasks: Chop[ping] off bird's head or slit[ting] bird's throat to slaughter bird, using knife. Hang[ing] bird by feet to drain blood. Dip[ping] bird into scalding water to loosen feathers. Hold[ing] bird against projecting rubber fingers of rotating drum to remove feathers. Cut[ting] bird open, remov[ing] viscera, and wash[ing] bird and giblets. May pluck chickens by hand.

DOT 525.687-070. Relying on the testimony of the vocational expert, ALJ determined that the demands of Plaintiff's past relevant work do not exceed his RFC and, therefore, Plaintiff could perform "his past relevant work" as a poultry dresser, the way it is "generally performed" in the national economy. (Tr. at 38.)

In determining whether a claimant can perform his past relevant work as generally performed, "[t]he inquiry . . . is not whether a claimant is able to perform the duties of [his] previous job, but whether the claimant is able to perform the duties associated with [his] previous 'type' of work." *Halloran*, 362 F.3d at 33 (finding that plaintiff could perform her prior work as a computer operator because she could perform the sedentary work required of her "previous 'type' of work," even though she could not sit continuously for eight hours as specifically required by her previous job (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981) (finding that plaintiff could perform her past relevant work as a cashier because she could perform the sedentary work required of cashier positions that could be performed in the sitting position, even though her previous cashier position at a supermarket required extended periods of standing))). Accordingly, because the job of a poultry dresser as generally performed does not involve lifting and carrying of up to 50 pounds, as Plaintiff prior work did, the ALJ did not err when she found that Plaintiff remains able to perform his "previous 'type' of work." *Halloran*, 362 F.3d at 33.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED**, Defendant's cross-motion for judgment on the pleadings is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order. The Clerk of Court is directed to enter judgment remanding this case, and to close the case.

**SO ORDERED.**

DATED:     August 1, 2022
           Brooklyn, New York

_____/s/_____
**HON. KIYO A. MATSUMOTO**
United States District Judge